UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **MONICA SLACK** | * | **CIVIL ACTION NO. 15-1980** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE WHITEHURST** |

**REPORT AND RECOMMENDATION**

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993.  Monica Slack, born in 1964, filed an application for a period of disability and disability insurance benefits on September 18, 2013, alleging disability as of August 1, 2006, due to Huntington's disease, gastritis, Irritable Bowel Syndrome ("IBS"), allergic rhinitis, generalized anxiety disorder ("GAD"), obsessive compulsive disorder ("OCD") and asthma.[1]

After the Social Security Administration denied her application, claimant requested a hearing before an Administrative Law Judge ("ALJ").  On August 4, 2014, the ALJ held a hearing (Tr. 29-67), after which she issued a decision denying benefits on December 12, 2014 (Tr. 14-23).

On May 14, 2015, the Appeals Council denied review.  (Tr. 1-4).  On June 30, 2015, claimant filed an action for judicial review with this Court.

---

[1] Claimant acquired sufficient quarters of coverage to remain insured through December 31, 2009.  (Tr. 16). Thus, she must establish disability on or before that date.  *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir.1990).

## I. STANDARD OF REVIEW

The Court limits its review of a denial of disability insurance benefits to two issues: (1) whether the Secretary applied the proper legal standards, and (2) whether the Secretary's decision is supported by substantial evidence on the record as a whole.  *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Wingo v. Bowen*, 852 F.2d 827, 829 (5th Cir. 1988).

The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971).  Substantial evidence is defined as more than a mere scintilla.  *Id*., 402 U.S. at 401, 91 S.Ct. at 1427.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id*.

The Court may not, however, reweigh the evidence or substitute its judgment for that of the administrative fact finder.  *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985).  If substantial evidence supports the administrative finding, the Court may then only review whether the administrative law judge applied the proper legal standards and conducted the proceedings in conformity with the applicable statutes and regulations.  *Id*. at 393.

## II. BURDEN OF PROOF

Disability is defined as " inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).  The existence of such disability must be demonstrated by medically acceptable clinical and laboratory diagnostic findings, and the overall burden of proof rests upon the claimant.  *Cook*, 750 F.2d at 393.

The Commissioner uses a sequential, five-step approach to determine whether a claimant is so disabled. *Ramirez v. Colvin*, 606 F. App'x 775, 778 (5th Cir. 2015). The steps include: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof is on the claimant at the first four steps. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The burden of proof shifts to the Commissioner at the fifth step to establish the existence of other available substantial gainful employment that a claimant can perform. *Fraga v. Bowen*, 810 F.2d 1296, 1301-02 (5th Cir. 1987). If the Commissioner identifies such employment, the burden shifts back to the claimant to prove that he could not perform the alternative work identified. *Id*. at 1302. Throughout the process, the ultimate burden of establishing disability remains with the claimant. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).

### III. ANALYSIS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability.

In fulfillment of Fed. R. Civ. P. 52, I find that the Commissioner's findings and conclusions regarding claimant's disability is supported by substantial evidence, based on the following:

## A. Medical Evidence

Claimant chiefly complains of Huntington's disease.[2] On January 13, 2005, she was evaluated at Emory Movement Disorders Clinic ("Emory") for symptomatic Huntington's disease. (Tr. 299). She reported that she had been gene-tested about 11 years prior and was positive with 42 CAG repeats, but she had no documentation. She reported vague imbalance-type symptoms and shaky-type episodes.

Claimant described her mood as normal, with no symptoms of depression or any other mood disorder. (Tr. 300). She had no automatic symptoms. She was able to do all of her activities of daily living without difficulty, and was driving with no accidents or near-misses.

On examination, claimant's mental status testing was normal. Motor exam revealed normal bulk, tone and power. On distraction, she had chorea in both sets of toes. On stress, she had some chorea and mild dystonic posturing of her left hand. Sensory exam was normal. She had normal coordination, no difficulty in walking and good postural stability.

Dr. James Green's assessment was symptomatic Huntington's disease. (Tr. 301). At that time, no symptomatic therapy was warranted. (Tr. 301).

Claimant returned on March 15, 2005, and denied problems functionally. (Tr. 302). Her symptoms were the same with depression noted by psychologist evaluation, but denied by claimant. (Tr. 529). She was actively job hunting, and reported no problems with driving, finances or activities of daily living. (Tr. 303).

---

[2]Huntington's Disease, also known as Huntington's chorea, is "a neurodegenerative disorder, with onset usually in the third or fourth decade, characterized by chorea and dementia." STEDMANS MEDICAL DICTIONARY 172670 (databased updated Nov. 2014). Chorea is defined as "irregular, spasmodic, involuntary movement of the limbs or facial muscles, often accompanied by hypotonia." *Id*. at 342.a neurodegenerative disorder, with onset usually in the third or fourth decade, characterized by chorea and dementia. *Id*. 172510.

On examination, claimant had very mild intermittent chorea in the feet and some extremely mild intermittent jerky movement in the trunk and face, but no other abnormal movements. Dr. Claudia Testa noted that claimant's slow eye moments and very minimal chorea were early signs of her Huntington's disease. (Tr. 304). Claimant did not have enough to meet the clinical criteria for a diagnosis, and had no treatable symptoms at that time.

Claimant returned to Emory seven years later on July 12, 2012. (Tr. 306). At that time, she was noticing more motor symptoms, and wanted an evaluation and physician's formal documentation regarding her psychiatric and cognitive state. She reported mild choreiform movements, gait imbalance, and a tendency to fall. Additionally, she noted anxiety, some obsessive compulsive-type tendencies, including repetitive hand-washing, and mild depression. She was started on Paxil, reporting that it "did wonders" for her anxiety and motor symptoms. She lived at home, took care of all housework and some bills, and drove her daughter around.

Dr. Michael Silva found that claimant had mild chorea which did not interfere with her functioning. (Tr. 310). She appeared to be fully cognitively intact, and had no deficits in executive function or judgment. He stated that her chorea was so mild that it did not merit treatment.

Dr. Silva noted that claimant's psychiatric problems, including anxiety, depression, and OCD-type behaviors were well-managed with Paxil. He recommended occupational therapy to help her plan for employment.

On September 9, 2009, claimant saw Dr. Luis M. Galvez for complaints of episodic persistent nausea, sporadic diarrhea and reflux. (Tr. 438). An upper endoscopy revealed mild gastritis. (Tr. 441, 451). A gastric emptying study was completely normal. (Tr. 438, 454).

On followup in October, 2009, claimant's gastritis was responding well to Kapidex. (Tr. 442, 464). Dr. Galvez noted possible underlying IBS. (Tr. 444). On followup, her IBS responded to dietary manipulation and pharmacologic treatment. (Tr. 446).

Claimant was seen at Atlanta ENT, Sinus and Allergy Associates from April 14, 2009 through October 16, 2009, for perennial allergic rhinitis with seasonal exacerbations. (536). She denied any respiratory complaints, such as cough, shortness of breath, chest pain, wheezing and hemoptysis. (Tr. 546). She was advised to install a HEPA filter in her bedroom and an electrostatic filter in the central air-handling unit. (Tr. 536).

On May 10, 2010, claimant informed Dr. Galvez that she had been able to manage her stress much more easily, and was overall feeling much better. (Tr. 470). On September 27, 2010, she was not taking any medication for generalized anxiety disorder ("GAD"), and admitted that she would not like to take anything if she could avoid it. (Tr. 479).

On January 9, 2012, claimant reported that she had been diagnosed with asthma, which was worsening because of reflux. (Tr. 507). After treatment, she reported that her symptoms were much better. (Tr. 511). The assessment was reflux and asthma, well-controlled on Aciphex and Zantac.

On February 19, 2014, Lisette P. Constantin, Ph.D., prepared a Psychiatric Review Technique and Mental Residual Functional Capacity ("RFC") Assessment for Disability Determination Services. (Tr. 73, 435). She noted that there was insufficient evidence in the file to determine disability prior to claimant's DLI.

By letter dated June 16, 2014, Dr. Diana Fernandez noted a current diagnosis of advanced Huntington's disease. (Tr. 552). She stated that "*At the present time*, it would be very

difficult for [claimant] to work or find employment." (emphasis added).

On July 28, 2014, Marsharee Chastain, LCSW, prepared a Medical Source Statement consisting of a checklist form containing numerous questions, some requiring narrative answers and others merely responsive checkmarks, about claimant's condition and limitations.[3] (Tr. 456-61). She reported that she had treated claimant intermittently from January 2008 through August 2010. (Tr. 456). Her diagnosis was OCD. She assessed a Global Assessment of Functioning ("GAF") of 60, indicative of mild to moderate symptoms.[4] (Tr. 462).

On August 1, 2014, Dr. Galvez prepared a Medical Source Statement consisting of a checklist form. (Tr. 553-57). He noted recurrent symptoms of IBS and GAD between 2009 and

---

[3]The Fifth Circuit has held that checklist opinions are unworthy of credence when they are not adequately supported by or are inconsistent with the medical records. *Heck v. Colvin*, 2016 U.S. Dist. LEXIS 96678, at *37-38 (E.D. La. Apr. 6, 2016) (*citing Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) ("[T]he 'questionnaire' format typifies 'brief or conclusory' testimony. . . . [W]e agree with the magistrate judge's conclusion that 'due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examinations, [the treating physician's] opinion is given little weight.'"); *Peck v. Barnhart*, 214 F. App'x 730, 738 (10th Cir. 2006) (ALJ provided legitimate reasons for rejecting doctor's opinion consisting "of checked boxes and circled numbers on a form" when the "opinion was not supported with additional explanation" nor justified by the treatment notes); *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) ("the checklist format, generality, and incompleteness of the assessments limit their evidentiary value"); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999) (upholding ALJ's rejection of physician's check-box form when it was contradicted by evidence in the record); *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) ("Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence.").

[4]The GAF scale is no longer included in the DSM-V. *Spencer v. Colvin*, 2016 WL1259570, at *6 n. 8 (W.D. Tex. Mar. 28, 2016); *Locure v. Colvin*, 2015 WL 1505903, at *10 (E.D. La. April 1, 2015) ("both the American Psychiatric Association and the Commissioner have recently decided that GAF scores are not helpful in either medical or disability decision-making."). However, the SSA published internal instructions regarding how to continue interpreting GAF scores that appear in medical records, noting that such scores should be treated as opinion evidence. *Jackson v. Colvin*, 2015 WL 7681262 at *3 (N. D. Tex. Nov. 5, 2015). The SSA further instructed that, " '[a]s with other opinion evidence, the extent to which an adjudicator can rely on the GAF rating as a measure of impairment severity and mental functioning depends on whether the GAF rating is consistent with other evidence, how familiar the rater is with the claimant, and the rater's expertise.' " *Harris-Nutall v. Colvin*, 2016 WL 3906083, at *5 (N.D. Tex. July 19, 2016) (*quoting Jackson*, at *3).

2012. (Tr. 553). He opined that claimant would experience frequent relapses of IBS that would preclude her ability to perform work duties. (Tr. 557).

Daniel J. Lenwoski, Ph.D., responded to a Medical Interrogatory on September 1, 2014. (Tr. 558). He checked that claimant had marked restriction of activities of daily living, difficulties in maintaining social functioning, and repeated episodes of decompensation, each of extended duration. (Tr. 559). In support of his opinion, he relied on Dr. Fernandez's opinion dated June 16, 2014, and Dr. Galvez's opinion dated August 1, 2014.

### B. Hearing Testimony and Witness Statements

At the hearing on August 4, 2014, claimant was 50 years old. (Tr. 33). She had past work experience as a registered nurse. She testified that she had quit working to become a stay-at-home mom. (Tr. 38).

Claimant had attempted to return to work in 2011, but could not because she experienced odd and inappropriate mannerisms. (Tr. 40-41). She also complained of severe anxiety, OCD and depression. (Tr. 44). She fought with her husband a lot because of Huntington's disease, and was going through a divorce. (Tr. 44). She had also lost custody of her daughter due to her condition. (Tr. 45).

Claimant testified that it took her a very long time to get ready because she had chorea, which caused her to lose her balance and fall frequently. (37). She had also started dropping things. (Tr. 43). She said that it sometimes took her two to three hours to go to the bathroom, and an hour to shower. She stated that her symptoms started increasing about seven or eight years prior. (Tr. 38, 43).

Kathleen Flatley, claimant's representative and friend, testified that she had known claimant since childhood. (Tr. 32). She recalled that claimant had worked as a nurse for many years, but was not working at the time her symptoms started. She testified that claimant had been disabled for a long time. (Tr. 33).

Claimant's estranged husband, Bane Slack ("Slack"), testified that he had noticed changes beginning in 2007, such as anxiety and OCD-type issues. (Tr. 47). He reported that she became very concerned about germs and hand washing, and was having constant movements and gastrointestinal issues. (Tr. 47-49, 53). He noted that she visited the doctor frequently, and had anxiety about their daughter being sick and set up a lot of appointments for her as well. (Tr. 49-50).

Slack testified that claimant had compulsive tendencies, such as vigorous scrubbing of her daughter during bathing. (Tr. 50-52). He reported that claimant had problems doing multiple tasks. (Tr. 54). He recalled that claimant was in the bathroom from 30 minutes to one and a half hours. (Tr. 55).

Thomas E. Bott testified as a vocational expert ("VE"). She classified claimant's past work as a registered nurse as medium with a Specific Vocational Preparation ("SVP") of seven. (Tr. 60). The ALJ stated that he would be sending interrogatories to a medical expert, who could not attend due to technical difficulties. (Tr. 60). Thus, she did not pose any hypothetical questions to the VE.

By email dated February 2, 2012, Mary Ann White informed claimant that her manager at St. Joseph's Intensive Care Unit asked that she not return because of her odd and inappropriate

mannerisms indicating an underlying medical issue. (Tr. 243). They recommended a medical checkup.

Claimant's sister, Michelle Genatempo ("Genatempo"), wrote in a letter dated January 21, 2014, that claimant's Huntington's disease had become noticeable "years ago." (Tr. 245). She reported that when claimant had visited her in New York in the spring of 2007, her mental state was "extreme and peculiar." (Tr. 245). She was very anxious about the trip, and was having panic attacks because her daughter's travel crib was not set up three days in advance. Genatempo recalled that claimant got very angry and literally screamed at her on the phone. She also observed that claimant had trouble doing little tasks, and that it would take her a half hour to mix her daughter's cereal.

## C. Argument

Claimant argues that: (1) the ALJ erred in failing to find that she was disabled prior to her date last insured and, therefore, entitled to benefits; (2) alternatively, the ALJ erred in failing to find that she was disabled for a period of time prior to her date last insured and, therefore, entitled to a closed period of disability benefits; (3) the ALJ erred in failing to give proper weight to the opinions of her treating physician, and (4) the ALJ erred in finding that her testimony and complaints of pain were not credible.

### 1. Did claimant establish disability prior to her date last insured?

The ALJ determined that claimant had medically determinable impairments of Huntington's disease, mild gastritis, IBS, allergic rhinitis, generalized anxiety disorder,

depression, OCD and asthma. (Tr. Tr. 16). However, she found that these conditions were non-severe. In the Fifth Circuit, "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on an individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." (emphasis added). *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (*quoting Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)).

In the decision, the ALJ noted that she had no doubt that claimant was disabled "today." (Tr. 20). However, she observed that the issue was "claimant's expired date of last insured and whether she was disabled hereto." *See Ivy*, 898 F.2d at 1048. After reviewing the evidence, she concluded that the record did not show that her conditions were of disabling-level severity prior to the expired DLI in 2009.

In support of her determination, the ALJ reasoned that while claimant was symptomatic for Huntington's disease during the period at issue, her motor exam revealed normal bulk, tone and power; her sensory, coordination and gait were normal, and her chorea was only minimal. She also noted that no therapy was warranted during that time, and that claimant denied problems functionally. The ALJ observed that, in essence, claimant's only symptoms were slow eye movements and very minimal chorea, which were early signs of the disease.

The ALJ's findings are confirmed by the reports from Emory in 2005, indicating that claimant denied problems functionally, and that no symptomatic therapy was recommended at that time. (Tr. 300-02). Additionally, claimant was actively job hunting, and reported no problems with driving, finances or activities of daily living. (Tr. 303). Even seven years later in 2012, Dr. Silva found that claimant's chorea was so mild that it did not merit treatment, and

11

recommended occupational therapy to help her plan for employment. (Tr. 310). *See Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (ALJ properly discredited complaints where claimant considered himself capable of working).

Additionally, the ALJ noted that the medical evidence indicated that claimant's IBS and mild gastritis were responding well to dietary changes and medications. (Tr. 442, 446). Further, in October 2009, claimant denied musculoskeletal, psychological, neurological and gastrointestinal problems. (Tr. 535). The medical records support the finding that these conditions were controllable prior to December, 2009. If an impairment reasonably can be remedied or controlled by medication, treatment or therapy, it cannot serve as a basis for a finding of disability. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988).

As to claimant's mental condition, the ALJ observed that claimant admitted to her medical providers that she had been able to manage her stress much more easily, and that overall, she was feeling much better. (Tr. 470). She stated that she was not taking any medication for GAD, and admitted that she would not like to take anything if she could avoid it. (Tr. 479). It is well established in the Fifth Circuit, as well as other Circuits, that the ALJ is not precluded from relying upon the lack of treatment as an indication of nondisability. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990); *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) (failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling condition).

In summary, the ALJ noted that in March 2005, claimant was only found to have early signs of Huntington's disease. (Tr. 20). She noted that there was no medical evidence after this date and prior to her DLI to suggest the severity of claimant's condition. Thus, she found that

claimant's medically determinable impairments prior to the date last insured were non-severe impairments. Because the ALJ's opinion is supported by the evidence prior to claimants' DLI, it is entitled to deference.

### 2. Did the ALJ properly weigh the physicians' opinions?

Claimant argues that claimant failed to give proper weight to the opinions of her treating physician. It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Newton*, 209 F.3d at 455 (*citing* 20 C.F.R. § 404.1527(d)(2)).[5]

Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence. *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan*, 38 F.3d at 237.

In the decision, the ALJ stated that she had considered and given "little weight" to the assessment of the treating physician, Dr. Fernandez, issued on June 16, 2014. (Tr. 20). She noted that Dr. Fernandez's diagnosis on that date was advanced Huntington's disease, and that, at that time, it would be very difficult for claimant to work or find employment. (Tr. 552).

---

[5]Now designated as 20 C.F.R. § 404.1527(c)(2).

However, the ALJ reiterated that while she had no doubt that claimant was disabled today, the evidence did not show that her conditions were of disabling-level severity prior to the date of claimant's date last insured in 2009. (Tr. 21).

The undersigned agrees that Dr. Fernandez's opinion, which was issued almost six years after claimant's DLI, does not pertain to the relevant time period. Evidence showing degeneration of a condition after the expiration of a claimant's insured status is not relevant to the Commissioner's disability analysis. *Dominguez v. Astrue*, 286 F. App'x. 182, 185 (5th Cir. 2008) (*citing Torres v. Shalala*, 48 F.3d 887, 894 n. 12 (5th Cir. 1995)). Thus, the ALJ's decision is entitled to deference.

Claimant also argues that the ALJ did not properly consider the opinions of Dr. Lonowski. The ALJ gave little weight to the Mental Interrogatory completed by Dr. Lonoswki on September 1, 2009, because it referenced Dr. Fernandez's assessment and was dated after claimant's date last insured. (Tr. 21). Even if the ALJ had heavily relied on Dr. Lonowski's opinion, such reliance would have been in error because his responses to the interrogatory were conclusory and without explanation. *See Giles v. Astrue*, 433 F. App'x 241, 247 (5th Cir. 2011) (supporting ALJ's decision to accord less weight to treating source's opinion based on answers to interrogatories which were conclusory and without explanations); *Stewart v. Colvin*, 2015 WL 5667032, at *5 (S.D. Miss. Sept. 25, 2015) (*citing Mason v. Shalala*, 994 F.2d 1058, 1065 (3rd Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best .... [but when] these so-called reports 'are unaccompanied by thorough written reports, their reliability is suspect.' ").

Additionally, the law is clear that, although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion. (emphasis added). *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir.1987). Whether an impairment is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). Thus, it was within the province of the ALJ to give less weight to Drs. Fernandez and Lonowski's opinions, which were rendered five years after claimant's insurance status expired, were brief and conclusory, and were contradicted by the reports of the treating physicians prior to December, 2009.

### 3. Did claimant establish that she could not maintain employment prior to her DLI?

Claimant further asserts that the ALJ was required to make a finding that she can maintain employment, citing *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). In *Singletary*, the Court held that "A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time." *Id*. at 822.

Since the issuance of its decision in *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002), however, the Fifth Circuit has determined that the Commissioner is not required to make a specific finding regarding the claimant's ability to maintain employment in every case. *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003); *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003). As the court stated in *Frank*:

> *Watson* requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms. For example, if [plaintiff] had alleged that her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs, this would be relevant to the disability determination. At bottom, *Watson* holds that in order to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time. An ALJ may explore this factual predicate in connection with the claimant's physical diagnosis as well as in the ability-to-work determination. Usually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment. Nevertheless, an occasion may arise, as in *Watson*, where the medical impairment, and the symptoms thereof, is of such a nature that separate consideration of whether the claimant is capable of maintaining employment is required.

(emphasis added). *Id*. at 619.

Here, claimant argues that she is unable to maintain employment. However, claimant has not shown that her condition "waxe[d] and wane[d]" in its manifestation of disabling symptoms prior to her DLI. *Frank*, at 619. Thus, the ALJ was not required to make a separate finding that claimant could sustain employment.

### 4. Did the ALJ err in assessing claimant's credibility?

Next, claimant argues that the ALJ failed to consider her long work history when evaluating her credibility. In support of this assertion, she cites *Walker v. Sullivan*, 1991 U.S. Dist. LEXIS 8842 (E.D. Pa. June 28, 1991); *Trew v. Shalala*, 861 F.Supp. 860 (D. Neb. 1994). These cases are from courts outside of the Fifth Circuit, which are not binding on this Court. *Leval v. Commissioner of Social Sec.*, 2012 WL 1123839, at *5 (W.D. La. Mar. 13, 2012), *report and recommendation adopted*, 2012 WL 1123835 (W.D. La. Apr. 3, 2012).

This same argument was raised in *McGee v. Astrue*, 2012 WL 7456174, at *8 (W.D. La. Nov. 26, 2012), *report and recommendation adopted*, 2013 WL 704624 (W.D. La. Feb. 26, 2013). There, plaintiff, who had worked for an 18-year period at the paper mill, asserted that the Commissioner failed to consider his long work history when evaluating his credibility. The Commissioner asserted that the cases cited by plaintiff were non-controlling, out-of-circuit decisions that did not support a claim of *per se* error. Further, the Commissioner argued that the Fifth Circuit had not adopted any such rule of law and that plaintiff had not articulated a basis for reversal.

> Magistrate Judge Kay agreed, finding as follows:
>
> Both 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) state that in evaluating symptoms, including pain, the ALJ "will consider all of the evidence presented, including information about *your prior work record*, your statements about your symptoms, evidence submitted by your treating or nontreating source, and observations by our employees and other persons." (emphasis added). In a case cited by plaintiff, *Rivera v. Schweiker*, 717 F.2d 719, 725 (2nd Cir. 1983), the court noted that plaintiff, a claimant with a thirty-two year employment history, was entitled to substantial credibility when claiming an inability to work because of a disability.
>
> The court agrees with the Commissioner. According to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), a claimant's work history is but one factor to consider when evaluating plaintiff's symptoms. Additionally, the Fifth Circuit has not adopted the rule of law cited by plaintiff and espoused in the Second and Third Circuits. We find that plaintiff's work history following his eighteen year period at the paper mill does not show consistent employment and does not compel any conclusion regarding his credibility.

(emphasis in original). *Id*. at *8.

As in *McGee*, the undersigned finds that the cases cited by claimant, which are out-of-circuit decisions, are non-binding on this Court. Additionally, claimant's work history is just one

17

factor to consider when evaluating her symptoms, and is not a grounds for reversal. Thus, this argument lacks merit.

Finally, claimant argues that the ALJ erred in finding her complaints not credible because her treating physicians "never expressed any doubt about claimant's pain complaints or accused [her] of malingering," citing *Sand v. Shalala*, 820 F.Supp. 1299, 1308 (D. Kansas 1993); *Colon v. Secretary of Health & Human Servs.*, 788 F.Supp. 671 (D. Puerto Rico 1994); *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994); *Kipervas v. Shalala*, 1994 WL 530175 (E.D. Pa. Sept. 28, 1994). [rec. doc. 11, p. 9].

The plaintiff raised the identical argument and relied on the same cases in *Lorah v. Commissioner of Social Sec.*, 2015 WL 4395351, at *9 (W.D. La. July 16, 2015). There, the Court rejected this contention, reasoning as follows:

> The authorities cited by claimant for this proposition are from outside of this Circuit and are not binding on this Court. *Sand v. Shalala*, 820 F.Supp. 1299, 1308 (D. Kansas 1993) (ALJ should consider the fact that none of the treating physicians ever expressed doubt about the plaintiff's complaints of pain or accused him of malingering); *see also Colon v. Secretary of Health & Human Servs.*, 788 F.Supp. 671 (D. Puerto Rico 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir.1994).
>
> In the Fifth Circuit, one of the factors relevant to the credibility analysis is whether a physician finds claimant disabled. *Ramirez v. Colvin*, [666 F. App'x. 775 (5th Cir. 2015)]; *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir.1995); *Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir.1989) (substantial evidence supported ALJ's finding that claimant's subjective symptomology not credible when no physician on record stated that claimant was physically disabled). That is not the case here.

*Id*. at *9. Here, as in *Lorah*, the cases cited are from out-of-circuit and are non-binding on this Court. Additionally, none of claimant's physicians found claimant disabled during the relevant time period. Accordingly, this argument lacks merit.

## IV. CONCLUSION

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed this 23rd day of August, 2016, at Lafayette, Louisiana.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE